and DEVON NORTHOVER and the Merit Systems Protection Board, 2011-3207. We'll be ready when you are, Ms. Wright, when your opponent has sat down and gathered himself. Good morning. May it please the Court, Abby Wright on behalf of the Office of Personnel Management. Before we get into the merits, could we just spend a moment on the question of whether the cases are moot? You know, we don't sit here to render advisory opinions. It strikes me that with respect to Conyers that all of the relief that could possibly be given to this employee has been given. And there's a question as to Northover. So could you tell us whether either one of them or both of them is moot? Well, I'll begin with Mr. Northover, Your Honor, who, when he filed his appeal to the Board, also filed a discrimination claim. And that has not been adjudicated. On remand, the administrative judge dismissed his case without prejudice to refiling, following this Court's decision in this case. So he has a discrimination claim that has never been adjudicated. That doesn't help you in this Court, though, discrimination claims. That's corrected. He had a mixed case. With respect to Ms. Conyers, the administrative judge did dismiss the case as moot because the agency had canceled the suspension and provided her with back pay. As we cited in our brief, this Court has two cases, the Chance case and the Horner case, where it stated that where OPM petitions for review under its statutory petitioning authority, there can be a live controversy between OPM and the Board, even when the employee has no continuity. As to what the law should be? Horner also involved a situation where the Court said specifically that there would be real-world consequences for the employee as a result of a decision one way or the other, correct? With Horner, the Horner case, Your Honor, one count, even under the Board's rule, which this Court rejected, one count was held to not be meritorious and the other count he settled. Yes, I understand. But the Court, correctly or incorrectly, said that a ruling one way or the other would affect the employee and apparently would reopen the settlement. That's what the Court said in Horner. And the Court's holding that the Office of Special Counsel didn't have authority to impose a discipline, I think you're right, Your Honor, did open that settlement up again. And so it could have had consequences for the employee. But the employee had no, at the point the petition was brought, the employee had no continuing interest. And this Court said there was no Article III problem. The employee wasn't perceived, but the controversy between the OPM and the Board, or whatever it was, between the two government agencies, would have had consequences for the employee. So that, you know, it would have real-world consequences. Whereas if Conyers is moved and has no consequences for the employee, the fact that you'd like us to tell you what the law is, isn't good enough for Article III, is it? How can it be? With respect to Mr. Northover, if this Court decides this case in the government's favor... But you're not answering the question. How can it be with respect to Conyers? If the decision one way or the other has no consequences at all, that we can't sit here to render an advisory opinion as to what the law should be, can we? Well, we have two petitions in this case, Your Honor, so... Now, what would the answer, with respect to... With respect to Ms. Conyers, I think one can read the Horner decision as saying that even when the employee has no continuing interest, that they really conceptualize the dispute between OPM, who Congress has given this authority... As to what the law should be? As to whether the board has erred in interpreting civil service... But what's the consequence if the board erred? There isn't any consequence. With respect to Mr. Northover, the consequence would be that his discrimination claim could go forward before... But with respect to Conyers, there's no consequence, right? When it goes back to Ms. Conyers, that case has been dismissed as moot, so Your Honor is correct as a fact, Your Honor, that there was... I don't mean to take up more of your time on this. With respect to Mr. Northover, there would be real-world consequences for his claim before the board, because under the government's position, his discrimination claim couldn't go forward, and under his position, it could. So there would be real-world consequences for Mr. Northover. Turning to the merits, beginning with Executive Order 10450, the President has directed agency heads to designate as sensitive those positions where the employee could have a material adverse effect on the national security. In the same Executive Order, the President directed... What kind of material adverse effect to someone who's in charge of the commissary and someone who's an accountant? These people don't require security clearances, right? They don't, and simply in this case, that they did not have access to classified information. I first want to respond very quickly by saying that issue is not before this Court, and we don't believe it, and I think the board accepted that it's not a proper subject for its review, or for judicial review, the question of whether these were properly designated or not. But to answer your question, OPM Regulation 5 CFR 732.102 fleshes out the concept of sensitive positions, and one of the things it says is that those positions are concerned with the preservation of the military strength of the United States. Mr. Conyers worked for the Defense Finance and Accounting Service. Mr. Northover worked for the Defense Commissary Agency. Of course, both those components of DOD have as their mission to support the military operations of the United States. And so DFAS, for example, it pays all military personnel. It pays even the Executive Office of the President. It pays military contracts, handles invoices, shipping orders, delivery orders. And so under DOD regulations, an employee who has access to that database of information, which Ms. Conyers did, is designated as sensitive. You're saying we shouldn't be drawing lines, and the board shouldn't be drawing lines, as to whether the guy who turns the grass outside might overhear something. But that's not for us or the board. I think that's right, Your Honor. In this court's case in Skies, which was a security clearance case, but the employee tried to sort of get around Egan by saying, well, my job shouldn't even have access to classified information. And this court said it's even more beyond question that the board in this court doesn't get to second guess why an agency determines that a position is sensitive. And so the same is true here, and I think the board in a footnote recognized that in its decision, that it didn't have the authority. And, of course, there's no statutory hook. The Civil Service Reform Act allows for review of removals and suspensions. We agree with you. Are we extending Egan? Your Honor, we don't. The government doesn't view it as an extension of Egan, an application of Egan. The principles in Egan, the Supreme Court began with Article II of the Constitution, the commander-in-chief power of the president, and from that comes the authority to protect the national security. And Egan talked about classified information because Mr. Egan had access to classified information. And disclosing classified information is, of course, one very obvious way that someone can endanger the national security, but there are others, and since 1953, executive orders. What you've got here, a statute, 7532, which gives specific authority to remove people without going through the usual MSPB procedures. I mean, as Justice Jackson said in the steel seizure cases, in terms of the executive authority, it's canon when there's a specific statute. That 7532 gives, among other things, a right to a hearing within the agency as to whether you should be removed or not, which is not something that you say needed to be given. So why would 7532, how can it be that you can proceed outside the statute and claim this executive authority to remove people without review by the MSPB? Well, that was an argument made in the Egan case. In fact, one of the distinctions between what the majority held and what the dissent held, the majority said they recognized the argument that the presence of section 7532 means that when you go under 7513, you get all of the usual board's review. I understand the argument was made in Egan, but if we regard Egan as distinguishable because it rests on the security clearance issue, then it's not authority rejecting this point. So put Egan to one side for a moment. Why is it that you can claim the authority to proceed outside of 7532 when Congress has specifically covered this situation in a statute? Well, I think even setting aside whether Egan applies here, the court in Egan interpreted the statute and said that there were two alternate routes, and I think that's true in this case as well. Well, it wasn't in Egan two alternate routes to removal. It was one alternate route to deny the access to classified information, but that's not an issue in this case. Well, I think it was two. I mean, 7532 provides a means of removal, and then for cause provides— why doesn't it provide a perfectly adequate remedy for the problem that you're identifying? Well, as we described in our brief, 7532 has a different standard. It has different consequences. So an employee who's removed under 7532 is removed basically from federal service. So Mr. Northover in this case was—the agency could place him— So you're saying you need the opportunity to be nicer to the employee than 7532 does? And with respect to the hearing issue, under DOD regulations, Mr. Northover and Ms. Conyers were entitled to appear in person before the Defense Office of Hearing and Appeals. And Ms. Conyers—I'm actually not certain if she appealed in person, but she appealed to that, and then she appealed to the Security Appeals Board. But she had the opportunity to appear in person, and she would have had the opportunity to be represented by counsel as well. So what's wrong with 7532? That's the question. I mean, you say it has harsher consequences for the employee. Well, so, I mean, that's up to Congress. It gave you this procedure, and you don't seem to want to use it, and you want to craft a sort of extra-statutory procedure based on not much. Well, with respect to—we don't view it as an extra-statutory procedure. I think the agency is not required to take removal steps under 7532. The agency can proceed for cause, and that cause in these cases is the ineligibility to occupy the sensitive position. And the question before this Court, I think, is, what does the Civil Service Reform Act empower the Board to review? And it's our position that just as an EGAN, the Board is not empowered to review the underlying determination that the employee is not eligible to occupy the sensitive position. The Board and EGAN, which is ultimately a firm— I'm sorry, that doesn't seem to be an answer as to why you shouldn't proceed under 7532. I mean, here's a specific problem. Congress addressed the very problem we're talking about here in 7532, didn't it? It did address that problem, but I think that the issue for the Court is whether the failure to choose to go under 7532 means that the Board's usual standards of review— Well, why wouldn't that be an indication that Congress said, if you want to remove people without going to the Board, use 7532? Why isn't that a proper inference from the passage of that statute? Well, I think if it were a proper inference, it would have also made the EGAN decision come out the other way as well, because the same could be true for security clearance denial. Mr. EGAN could certainly have been removed under 7532. The agency chose not to do that. That didn't mean that Mr. EGAN then received Board review of the underlying determination to revoke his security clearance. So I think that the same holds true in this case, and I see that I'm into my rebuttal time. Go ahead and finish your thought. I just wanted to emphasize that one point the Supreme Court made in EGAN was that the incompatibility of the Board's usual standards of review was a clearly consistent standard that's found in Executive Order 10450. The Board is required under the Civil Service Reform Act to apply preponderance of the evidence review. The Board also has made clear it will apply to its usual Douglas factors. It could mitigate penalties. And the Supreme Court in EGAN said, when we look at the incompatibility of these two standards, it becomes clear that this is not what Congress intended. I'd like to reserve that remainder. I'd like to get a little bit more from the government, when you come back at least, on sensitivity of positions versus security classification of positions. Why don't you ask them the question now? Okay. So there will be an opportunity to respond. The government seems to be saying, in what you said before, that sensitivity is about accounting information and so on. But can a position be sensitive simply because it provides observability? That is, one of these examples that was given was somebody working in the commissary. And it seems to me that somebody working in the commissary has an opportunity, without access to classified information, to observe troop levels, potential for where someone's going, from what they're buying, that sort of thing. I think that's right, Your Honor. We agree with that. And I think in EGAN, Mr. EGAN worked on a nuclear submarine, and so part of it was simply what he was observing, the coming and going of a nuclear submarine. And so the sensitivity can be the place where the employee works. What are they able to observe? What could they infer, as you say, from purchases and shipments? In those cases, you have border patrol agents who may not have access to classified information, but in fact are standing at the border to prevent the entrance of terrorists and terrorist materials. And, of course, they could be perhaps bribed and then allow materials, and that could have that material adverse effect on the national security, which the President speaks about in Executive Order 10450. Thank you. Thank you, Ms. Wright. We'll give you your full five minutes back. Mr. Grahalis? Grahalis. And you're speaking for Ms. Conyers and Mr. Northover? That's correct. And you've got seven minutes, and you're leaving eight minutes for the board. Correct. May it please the Court, I wanted to address your question about mootness. I just want to say, as to Mr. Northover, this case is undeniably not moot. The scope of review in his EEO claim will be directly affected by this Court's decision on the scope of review. As to something else that the government spoke about, we believe it would be a quantum expansion of EGAN. Okay, let me jump on you right there, Mr. Grahalis. You say at page 19 of your brief, the Supreme Court decision overflows, talking about EGAN, with evidence of the Court's overriding focus on access to classified information. Yes, Your Honor. At every step, EGAN wrapped itself with concerns over classification. Well, let me take it to EGAN. In 484 U.S. 527, they say the proposition talking about the general rule runs aground when it encounters concerns of national security. And then it says, you're talking about the security clearance limitation that follows it. It says, as in this case, where the grant of security clearance to a particular employee is sensitive and inherently discretionary, judgmental, and so on. But I find that language exemplary. That is to say, there's a general statement runs aground when it encounters concerns of national security. How does this case get limited just to security clearances? In two ways, Your Honor. One, we must understand that as the Court, as Justice Blackmun was writing that, he had in front of him coal, which clearly equated sensitive positions with access to classified information. And so... How do you deal then, point of coal, with its definition of national security? We think it clear from the statute as a whole that the term was intended to comprehend those activities of the government that are directly concerned with the protection of the nation from internal subversion or foreign aggression. Seems to me, that's everything in the world. But we deal with that by, if you look at coal, and you look at the Court's reflection on comments by Mr. Larkin, who was a representative for the DOD, who was saying that these are national security concerns to the extent that they have access to classified information. And we also do that by looking at Egan after Justice Blackmun is discussing that it runs aground in terms of national security. They go on to say, at 529, predictive judgment of this kind must be made by those with necessary expertise in protecting classified information. The protection of classified information must be considered to the broad discretion of the agency responsible. And that is why we believe Egan is limited to the presence or absence of classified information. But all of that, all of that language on 529 flows out of the discussion on 527. You can't just look at the one without looking... But we believe that when you do read them in conjunction, what the discussion of classified information is doing is giving context to Justice Blackmun's comment that it runs aground when it comes into questions of national security. But shouldn't it be the Board or this Court to make distinctions between what provides access to national security information, sensitive positions, and those that don't? Well, Your Honor, we believe that it's actually Congress that made that determination by inserting 7532 into the CSRA at the same time, knowing full well that it had Executive Order 10450 in front of it, it had Cole in front of it, and it still inserted 7532 as a separate mechanism and gave to the Board in 7513 and 7701 the power to review adverse action appeals on their merits. There's nothing in the Executive Order here that we're dealing with that provides for the removal without MSPB review, right? That is correct, Your Honor. And so had Congress wished to put a limitation, they could have done so as to eligibility-based appeals. And that is another reason why we believe narrowly because the Court was crafting an exception in the face of a statute that has no such exception and that speaks unequivocally to national security suspensions and removals. Is it your position that these cases don't speak to national security? Your Honor, these cases speak to sensitive positions. They are separate and apart from the calculus that Egan relied on for classified information. That wasn't my question. I said, do they not speak to national security? Not classified information. We do not believe that they speak to national security in the same sense that a security clearance case does that is controlled by Egan. And the calculus, and this is something the government mentions in their brief, they urge that the calculus is the same. But we know that it is not. When we look here, if you look at its joint appendix, I believe 163 to 165, the position sensitivity designation record, it gives you evidence, proof that the calculus is not the same. That an accounting technician who deals only with pay is not the same. It is not the same type of information. It is not the same level of national security that knowledge of the inner workings of a nuclear submarine presents. Well, but I have trouble saying that we should be making that kind of distinction. It seems to me that the distinction is that with respect to access to classified information, there's a specific executive order regulation that deal with that and say, here's how it should be done. In this area that we're dealing with here, with these non-critical sensitive positions, there's no executive order, there's no regulation that says these people can be removed and denied the authority to go to the MSPB. It hasn't been specifically addressed either by the president or by regulation, right? That's absolutely true, Your Honor. But if we, in the face of, say, that silence, read, if we expand EGAN, rather, I see that my time is up. May I answer? Well, finish the question. Answer the question. If we expand EGAN even further, we end up reading 7532 completely out of the statute. And that is how we believe that is reconciled. We'll hear now from counsel for the board. Is it Geiger or Goudreau? Goudreau. Goudreau. May it please the court. The petitioner's theory is not supported by any statute. It's not supported by EGAN. And it has absolutely no limit. Any position could be a national security position. According to DOD regulations, any position can be a national security position if so designated by the head of the DOD component or his or her designee. There's absolutely no limit at all on what can be a national security position. By contrast. And is it the role of the courts to counter that? No, not at all. The board's decision does not say that the board is going or the court will get involved with the designation of a position as a national security position. What the board's decision says is that that does not affect the board's statutory jurisdiction. By contrast, when we talk about classified information, the 1995 executive order, 12,986, is very specific about who can have access to classified information. The primary foundation of that is there has to be a need for access to classified information. And you're conflating classified information and sensitive information. Not at all, no. Now, there's an executive order on classified information. DOD has about 186 pages of regulations on who should have access to classified information. That's all very well defined. Who can be in a national security position is not well defined. And that's why the petitioner's theory would eviscerate the Civil Service Reform Act, would eviscerate the protections provided by Title VII, by the Rehabilitation Act, by the Whistleblower Protection Act. All that would be gone because if you say that the board cannot review an adverse action claim because the person happens to occupy a national security position, that means there's no substantive review at all. That means that the statutory right to a hearing that that person enjoys is gone. There's no hearing on the merits. You're taking it a long way. I agree with you. It's got some potentially scary aspects to it. But on the other hand, there are potential remedies as well. For instance, legislation that specifies the reaction. Well, that's exactly right, Your Honor. Instead of going to litigate this before the board and this court, OPM and the Department of Defense could go to Congress. But they've also got EGAN. And if we read EGAN as saying that what the court is concerned with is not just classified information but national security information, and the government runs them up under an EGAN analysis, then there is a remedy of going back to Congress or to the courts, if they run them up. Your Honor, first of all, EGAN, I believe, should be read in conjunction with COLE. They're both Supreme Court decisions. COLE said, don't take this too far. EGAN, in the very first sentence, says this is a narrow question. The Supreme Court struck the appropriate balance at EGAN. Well, the Congress has already addressed the question, 7532. It's given them exactly the remedy for what they're concerned about. And they don't want to use it for whatever reason. You know, I mean, it strikes me as startling that an executive without an action by the president, without regulations, just sort of on their own saying there's a big exemption here to MSPB review, and we don't have to use the specific procedure that Congress gave us to deal with exactly this situation. That's exactly right. The Petitioner's Theory completely disregards section 7532. And section 7532 was actually passed by Congress in 1950. It was on the books when the Civil Service Reform Act was passed in 1978. Congress was very much aware that there was this exception. So to now say that Congress didn't intend the board to hear these types of cases, it was there when Congress passed the Civil Service Reform Act. And the court was aware of it when they did Egan. Right, but the court in Egan did not say, this applies to everyone. The court in Egan said, this applies to employees who hold positions which need access to classified information. And in those type of cases, the court struck the balance and said this is a narrow exception. But it says over and over again as a predicate in national security information. It does. Exactly. And Respondents Conyers and Northover do not have access to national security information. They don't. And consider this, Your Honor. Mr. Egan had access to nuclear-powered Trident submarines. He could go on. Mr. Northover has access to produce. Well, let's take that analogy that was drawn in either your brief or the other, but I think maybe in yours. And that is the grocery clerk compared to, that is the commissary clerk, compared to the person at the border. And the assumption was that the person in the commissary doesn't have potential national security implications. That's why I asked the government that question, because it seems to me they do. And that's uniquely a government security determination. Is somebody working behind the counter able to say this unit is buying sunglasses and they're going to deploy to the Middle East? How do we judge that? Well, for one thing, that's no different than the clerk at the 7-Eleven across the street from the base. But you're not making that determination. The board's not purporting to decide whether it should be designated as a national security position or not. That's not the issue in the case. The question is whether the mere fact that it's been designated as a national security position takes it out from under MSPB review as to the decision to remove the employee or suspend the employee. That's right. Nothing in the board's decision prevents an agency from taking an adverse action. And not only that, once the decision is made to take an adverse action, the determination whether to go through 7513 or 7532, that determination is up to the agency. The agency decides that. They get to decide whether they want to go to the board or not. As far as Border Patrol, not too long ago this court had a case, James v. Dale, which was also brought by the director of OPM. It involved the Border Patrol and a Border Patrol agent. And the court said there that, among other things, that the board is able to make determinations involving loyalty and judgment and trustworthiness. And so it's clearly that whatever the position is, whether it's Border Patrol or whether it's Ms. Conyers working as an accountant assistant, the board will apply its procedures. And if the agency does not wish to go through the board procedures, the agency has the option of going through 7532 and using their own summary procedures, all internal to the agency. Anything further, Mr. Gover? No, that's it. Thank you. Ms. Wright has some rebuttal time. Tell us more about why 7532 shouldn't be the exclusive provision. Well, I would begin where I began last time, which is that the Supreme Court and Egan address what is basically the same argument, which is that because of 7532, agencies have to go that way. And if they choose not to, then the board gets to review all the way back into the security claims determination. The Supreme Court rejected that argument in Egan, and I think the same applies here. With respect to 7532, as Mr. Gover noted, it's purely internal review. There is not even the for-cause review that an employee gets when they are removed for cause because they have lost their eligibility for access to a sensitive position or access to classified information. And this court has precedent saying that the board and this court can review whether an agency, for example, complies with its own procedures. And under 7532, there would simply be no review whatsoever of the agency's actions. If we go your way, does that apply to all agencies or just the Defense Department? It would apply to all agencies who have designated positions as sensitive. The Department of Defense is obviously a huge agency and has a large number of sensitive employees. But I wanted to address... Has the president made the determination that these national security positions should be exempt from MSPB review? I don't believe the president would need to make that determination because... But there's no express... There is no determination. Answer my question. There is no determination by the president, correct? There is no executive... None of the executive orders say expressly that there would be no board review. But the Supreme Court's decision in 1988 in Egan... Is there any regulation here by the Defense Department that says there should be no MSPB review? There's regulations classifying positions as sensitive and then giving guidelines for when and how eligibility is determined. But I don't think the Department of Defense has any regulations where they've asserted that the board couldn't review their eligibility determination. But with respect to the president, the same is true of classified information there. None of the executive orders say that it's excluded from MSPB review. I mean, of course, because we have the 1988 Egan decision. But at Egan, there was a presidential executive order dealing expressly with the procedures for removing access to classified information. It directly addressed that, correct? 10.865 existed at the time, and that's the executive order that I think Your Honor is referring to. But when the Egan court cites the clearly consistent standard and talks about the background investigations, etc., that's all 10.450, which is the same that applies in this case and can speak broadly of sensitive positions, not specifically of access to classified information. I wanted to respond to one point, which is the idea that there would be... that there's no limitation on what positions are designated. The president has said that positions are designated as sensitive where the occupant could have a material adverse effect on the national security. There are OPM regulations and there are DOD regulations further fleshing that out, and there are ongoing rulemakings by both DOD and OPM to further flesh out those regulations. If the president is unhappy with how designations are being made, he can, of course, issue further guidance. And indeed, in 10.450, there's a provision that allows OPM to report to the national... or requires OPM to report to the National Security Council when there are violations of national security regulations and rules. If there are no further questions, we would ask that the board's decisions be reversed. All right, thank you. And we'll take the case under advisement.